UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD WILLIAM KADAR, JR.,

    Plaintiff,

v.                                                  Case No. 8:18-cv-962-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 20). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 995, 1969). Plaintiff then requested an administrative hearing (Tr. 1993). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 1995-2035). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 44-54). Consequently, Plaintiff timely requested review of

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

such denial, which was remanded by action of the Appeals Council (Tr. 55). Another hearing was then held on April 26, 2017 (Tr. 2036-62), and subsequent to such hearing, the Administrative Law Judge issued another unfavorable decision on June 14, 2017 (Tr. 20-39). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 13). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1960, claimed disability beginning April 18, 2012 (Tr. 23, 38). Plaintiff obtained a high school education (Tr. 38). Plaintiff's past relevant work experience included work as a truck driver and recreational aide (Tr. 37-38). Plaintiff alleged disability due to back injury on left side, COPD, on oxygen continually, obesity, enlarged heart, sleep apnea, and thyroid problems (Tr. 1977).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2016 and had not engaged in substantial gainful activity since April 18, 2012, the alleged onset date (Tr. 23). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: history of degenerative disc disease of the lumbar spine; history of degenerative disc disease of the cervical spine, with more recent anterior cervical discectomy and fusion at C5-C6 and C6-C7; left shoulder osteoarthritis, status-post recent surgery; history of left knee surgery, with more recent evidence of mild degenerative joint disease; history of pneumothorax, with residual emphysema/chronic obstructive pulmonary disease, interstitial/pulmonary fibrosis, possible *Mycobacterium avium* complex, and related abnormalities; obstructive sleep apnea; recurring hernias, status-post surgeries; and obesity. *Id.* Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that the Plaintiff can only occasionally climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, but only occasionally stoop, balance, kneel, crouch, and crawl; can occasionally reach overhead; can tolerate occasional exposure to fumes, odors, dust, gases, and extreme heat; and can tolerate occasional exposure to hazards, such as moving mechanical parts of equipment, tools, or machinery (Tr. 26). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 27).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined the Plaintiff could perform his past relevant work as a recreational aide (Tr. 38). In the alternative, given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a route delivery clerk, order filler, and layaway clerk (Tr. 38-39). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 39).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation

marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

The Plaintiff argues that the ALJ erred by improperly formulating his RFC. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**A. RFC**

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the

ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3).

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Further, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). According to the ruling, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at *5. Therefore, in denying disability benefits, the evidence must show that the claimant can perform work on a regular and continuing basis.

### a. Medical Opinions

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v.*

*Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). A claimant's RFC is, ultimately, "a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).

State agency medical consultants are considered experts in the Social Security disability evaluation process. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The weight given to the opinion of a state agency medical consultant depends on whether the opinion is supported by and consistent with the record as a whole. SSR 96-6p. In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996). Even if the state agency medical consultant cannot review all of the claimant's medical records before rendering an opinion or offering an RFC assessment, the ALJ has access to the entire record, including the claimant's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus whether to afford the opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony).

Specifically, the Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC because the ALJ failed to account for Plaintiff's need for supplemental oxygen and an assistive device for ambulating. As an initial matter, the Plaintiff boldly claims that "*[a]ll the medical opinions of record agree on two primary points, which Plaintiff emphasizes here: that he uses*

*an assistive device to walk and needs oxygen to maintain appropriate O2 saturation levels.*" Notably, as the Commissioner aptly contends, this repeated statement, upon which the Plaintiff premises his entire argument, is unsupported by facts, medical records, or any citations to the record itself (Tr. 32, 33, 37). Furthermore, the mere presence of a condition or impairment is not enough to find a claimant disabled; it is the functional limitations of a claimant's conditions or impairments on a claimant's ability to work that are determinative. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Here, the ALJ concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that the Plaintiff can only occasionally climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, but only occasionally stoop, balance, kneel, crouch, and crawl; can occasionally reach overhead; can tolerate occasional exposure to fumes, odors, dust, gases, and extreme heat; and can tolerate occasional exposure to hazards, such as moving mechanical parts of equipment, tools, or machinery (Tr. 26). The Plaintiff failed to meet his burden of showing that his need for supplemental oxygen and an assistive walker limit his ability to perform work. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512, 416.912. The ALJ's formulation of the RFC was based on a variety of evidence in the record, such as Plaintiff's medical records, daily activities, work history, Plaintiff's own statements, and noncompliance with treatment, all of which provide substantial evidence for the ALJ's opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substit[ing] our judgment for that [of the Commissioner] . . . *even if the evidence preponderates against' the decision*") (emphasis added). *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, 677 F. App'x 529, 531 (11th Cir. 2017) (holding

that the ALJ properly concluded that the claimant did not require continuous supplemental oxygen considering the claimant's "history of noncompliance with recommended medical care; his treatment records, which indicated stable conditions when he complied with recommended medical care; the activities he claimed to have performed while allegedly needing oxygen, such as cutting the grass; and evidence of his ability to conduct his daily activities that was contrary to what he had generally reported"); *Buley v. Comm'r of Soc. Sec.*, 739 F. App'x 563, 570 (11th Cir. 2018) (holding that the ALJ properly rejected the treating physician's opinion that the claimant should use a cane when the opinion was inconsistent with the doctor's treatment notes and the overall record).

For instance, the ALJ noted that Plaintiff's daily activities were inconsistent with these alleged limitations as the Plaintiff was out "cutting his grass" and had "good" ambulation and endurance the same month he alleged disability, i.e., in April of 2012 (Tr. 29, 35, 1167, 1185). In fact, Plaintiff had minimal work history even prior to his alleged disability onset date (Tr. 27, 35, 1062, 1756). Further, the Plaintiff took a cross-state motorcycle trip to Daytona Beach, Florida, walked regularly, and needed a knee brace "when skiing or playing basketball" (Tr. 31-32, 35, 312, 315, 483, 856, 1848). The Plaintiff was enrolled in college classes from at least January 2013 through October 2014 (Tr. 31-32, 304A, 373, 405, 460, 490, 1863, 1866). The ALJ also noted that the Plaintiff's own statements were at odds with the alleged limitations as the Plaintiff frequently denied any shortness of breath (Tr. 30-34, 235, 301, 307, 615, 622, 747, 751, 755, 759, 779, 800, 1451-55, 1458, 1963) and admitted "doing well" with his breathing once he stopped smoking (Tr. 30, 314). In fact, despite Dr. Averill's advice and the evidence of some benefit, the Plaintiff failed to comply with using his CPAP machine for obstructive sleep apnea (Tr. 29-31, 35, 289, 707, 710, 724, 728, 894, 1267-68, 1464, 1467, 1469, 1956).

Notably, the Plaintiff's medical records are inconsistent with his alleged limitations. As an initial matter, the ALJ noted the Plaintiff's medical documentation of a history of possible symptom over-exaggeration and self-limiting behavior during examinations (Tr. 27-28, 793, 1309-10). Then, the ALJ noted the largely unremarkable findings on physical examination of Plaintiff's musculoskeletal and respiratory systems, including a normal gait, sensation, reflexes, and strength and clear lungs, without frequent wheezing or dyspnea (shortness of breath) (Tr. 28-35, 193, 234, 240, 246, 298, 301, 304, 306, 309, 311, 314, 322, 615, 622, 652, 666, 706, 713, 720, 727, 731, 734-35, 747, 751, 755, 759, 799, 801, 871, 1391, 1395, 1451-55, 1458, 1467, 1472, 1785, 1880). More specifically, as for the Plaintiff's alleged need for supplemental oxygen, the ALJ noted that the Plaintiff obtained pulmonary clearance for numerous surgeries during the relevant period (Tr. 34, 204, 660-61, 667-68); treatment records noted that his (chronic obstructive pulmonary disease) ("COPD") was "stable," "asymptomatic," and/or "well controlled" (Tr. 30-31, 299, 306, 312, 322-23); the Plaintiff's respiratory health had improved even more since his gastric sleeve surgery (Tr. 32, 34, 297, 300, 648-49); Plaintiff's medical results of pulmonary function/spirometry tests (which showed FVC and FEV1 scores) indicated only "mild" limitation or "normal" results (Tr. 30-32, 34, 291-92, 625, 627, 653, 666, 727, 796, 1438); and observations dating May of 2012 noted no apparent respiratory issues and "normal" breathing (Tr. 34, 1075).

Further, the ALJ properly assessed the medical opinions when formulating Plaintiff's RFC regarding Plaintiff's need for supplemental oxygen and an assistive device for ambulating. The ALJ properly gave little weight to non-examining state agency medical consultant Dr. Steele upon noting that Dr. Steele did not treat or examine the Plaintiff, and he rendered his opinion very early on (Tr. 36, 1443-46). 20 C.F.R. §§ 404.1527 (c)(6), 416.927 (c)(6) (familiarity with case file). Then, the ALJ properly gave only some weight to Dr. Greenfield's

opinion, the consultative examiner. The ALJ noted that Dr. Greenfield's assessment was the most recent in the record and concentrated on the main issues for Plaintiff's claim, particularly his respiratory health (Tr. 36-37). The ALJ noted that Dr. Greenfield's physical examination findings were inconsistent with Plaintiff's allegations (Tr. 36, 639-43). For instance, Dr. Greenfield noted that Plaintiff's lungs were clear, with no rhonchi, wheezing, or rales; Plaintiff walked with a normal, fluid, and age-appropriate gait; had 5/5 muscle strength and intact grip strength; had a full range of motion throughout his body; and had no motor deficits in any extremity (Tr. 639-43). The ALJ then noted that Dr. Greenfield's findings were "equivocal," as, for instance, Dr. Greenfield stated that Plaintiff needed a walker to walk, all while opining that Plaintiff "could ambulate without using a wheelchair, walker, or 2 canes or 2 crutches." (Tr. 631). The ALJ did not agree with certain opinions Dr. Greenfield rendered, in particular, his extreme restrictions on Plaintiff's ability to sit, stand, walk, climb, stoop, kneel, crouch, or crawl (Tr. 37). In support, the ALJ properly noted that Dr. Greenfield "offered little meaningful discussion of the evidence supporting such limitations," other than references to Plaintiff's own subjective complaints (Tr. 37). For instance, while Dr. Greenfield noted that Plaintiff had extreme limitations in sitting, standing, and walking and needed a walker, he failed to support such conclusory opinion with an explanation supporting the limitations in the space provided (Tr. 634). Further, when interrogated on Plaintiff's oxygen therapy and work-related limitations, Dr. Greenfield opined that there is "[n]o major evidence of COPD . . . wouldn't require a lot of [oxygen]. May have limitations of no repetitive lifting [over] 40 [pounds]." (Tr. 36, 624).

Also, the ALJ properly gave little weight to both Dr. Aladesawe and Dr. Smith's opinions, who opined that Plaintiff was extremely physically limited and needed an assistive device when ambulating (Tr. 35, 1549-59). For instance, the ALJ noted that the doctors'

12

opinions were not internally well-supported with any discussion of the clinical signs/findings supporting such extreme limitations (Tr. 35). Indeed, neither of the two opinions provided clear, supported explanations for the limitations—instead, they cited to scant diagnostic results through largely checkbox forms (Tr. 1555, 1549). Yet again, the ALJ noted that the opinions contained "almost no meaningful discussion of the evidence supporting . . . limitations." (Tr. 36). Further, the ALJ noted that the opinions were inconsistent with the medical and non-medical evidence (Tr. 35-36). As previously noted, for example, the ALJ cited the largely unremarkable findings on physical examination of Plaintiff's musculoskeletal and respiratory systems, including a normal gait, sensation, reflexes, and strength and clear lungs, without frequent wheezing or dyspnea (shortness of breath) (Tr. 28-35, 193, 234, 240, 246, 298, 301, 304, 306, 309, 311, 314, 322, 615, 622, 652, 666, 706, 713, 720, 727, 731, 734-35, 747, 751, 755, 759, 799, 801, 871, 1391, 1395, 1451-55, 1458, 1467, 1472, 1785, 1880). Notably, the ALJ highlighted that the doctors' opinions were inconsistent with their own treatment records. For instance, Dr. Aladesawe's 2013 treatment notes did not indicate Plaintiff had an abnormal gait or respiratory abnormalities (Tr. 31, 1451-55, 1458-59). Further, none of Dr. Aladesawe's medical source statements note that Plaintiff needed supplemental oxygen (Tr. 1461, 1555-58). Similarly, Dr. Smith's 2013 treatment notes failed to mention that Plaintiff was using a handheld assistive device to ambulate (Tr. 303-19); instead, they show that Plaintiff told him that he had taken a cross-state motorcycle trip, with no weakness on his return, and was taking college courses (Tr. 304A-305, 315). Further, the Plaintiff also told Dr. Smith in 2013 that his breathing was "doing well" after he quit smoking, and his chest and musculoskeletal examinations were repeatedly normal (Tr. 309, 311, 314). In fact, Dr. Smith opined that Plaintiff's COPD was stable and advised the Plaintiff to increase exercise (Tr. 306).

Then, the ALJ properly rejected Dr. Averill's opinion that Plaintiff's respiratory impairments limited him to a significantly reduced range of sedentary work as he again noted that Dr. Averill's medical source statements contained "no meaningful discussion of the evidence supporting these limitations (Tr. 36). Further, the ALJ noted that Dr. Averill's opinions were inconsistent with the relatively modest medical signs and findings noted on examination. *Id.* For example, Plaintiff's respiratory findings and pulmonary function test results were largely unremarkable during the relevant period (Tr. 179-81, 228-29, 247, 246, 255, 359, 482, 516, 724, 727, 740, 827, 858, 872, 1428, 1438, 1472, 1720-22, 1758-59, 1867, 1964, 291-92, 625, 627, 653, 666, 727, 796, 143). Further, the Plaintiff was cleared from a pulmonary standpoint for multiple surgeries and he admitted improvement in his breathing once he quit smoking and underwent weight-loss surgery (Tr. 204, 297, 300, 314, 648-49, 660-61, 667-68). Notably, in establishing that the Plaintiff's RFC did not need to account for supplemental oxygen, the ALJ also noted that the VA records showed that the Plaintiff needed oxygen with "exertion" and not at rest, but after his gastric sleeve surgery, he only needed oxygen *at night* (Tr. 36, 359). In similar fashion, Dr. Averill noted that the Plaintiff needed oxygen *at night* to decrease night heart pressure (Tr. 36, 654, 728). The ALJ gave greater weight to Dr. Averill's recommendation for supplemental oxygen at night than the VA records as Dr. Averill saw the Plaintiff more frequently (Tr. 36). Consequently, based on the record and the ALJ's opinion, the Court finds that the ALJ properly considered Plaintiff's need for supplemental oxygen and an assistive device for ambulating when formulating the Plaintiff's RFC. As such, the ALJ applied the correct legal standards and the decision is supported by substantial evidence.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 9th of August, 2019.

*[signature]*

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record